**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION**

|  |  |  |
|---|---|---|
| ELLEN ALLICKS d/b/a ALLICKS EXCAVATING, et al., on behalf of themselves and others similarly situated, | ) ) ) ) ) | |
| Plaintiffs, | ) ) ) | Case No. 4:19-cv-01038 |
| v. | ) ) | |
| OMNI SPECIALTY PACKAGING, LLC, et al., | ) ) ) | |
| Defendants. | ) ) | |

**PLAINTIFFS' SUGGESTIONS IN SUPPORT OF PARTIES'
JOINT MOTION FOR PRELIMINARY APPROVAL OF
CLASS-ACTION SETTLEMENT AGREEMENT**

COME NOW PLAINTIFFS Adam Sevy, Shawn Hornbeck, Arno Graves, Ron Nash, Todd Vohs, Wayne Rupe, David Guest, Bryan Nelms, Robert Thiry, Larry Muhs, Anthony Shaw, Rusty Shaw, Tim Sullivan, Roger Bias, Robert Withrow, and Ellen Allicks d/b/a Allicks Excavating, by and through their attorneys of record, and submit the following Suggestions in Support of the Parties' Joint Motion for Preliminary Approval of Class Action Settlement Agreement ("Joint Motion").[1]

## I.    INTRODUCTION

Plaintiffs and Defendants have agreed to a class-action settlement that makes substantial monetary and non-monetary relief available to what is estimated to more than 285,500 persons and entities who purchased O'Reilly 303 Tractor Hydraulic Fluid in any state in the United States,

---

[1] Unless otherwise noted, capitalized terms used herein have the meanings assigned to them in the Settlement Agreement and Release. (*See* Joint Motion Exhibit 2.)

other than Missouri, during the Class Period.[2]  The class-action settlement is set forth more fully in the Settlement Agreement and Release, including all exhibits thereto ("Settlement" or "Settlement Agreement"), attached as <u>Exhibit 1</u> to the Joint Motion.

Settlement of a class action requires judicial approval, usually consisting of three major steps:  (1) preliminary approval of the settlement and conditional approval of the settlement class; (2) dissemination of notice to the class; and (3) the holding of a formal fairness hearing to determine whether the settlement should be granted final approval as fair, reasonable and adequate.

In their Joint Motion, the Parties request that the Court enter the accompanying proposed order which:

(a)     grants preliminary approval of the settlement;

(b)     conditionally certifies, for settlement purposes, the Settlement Class, as defined in the Settlement Agreement, and appoints the named Plaintiffs as Class Representatives and Plaintiffs' attorneys as Class Counsel;

(c)     approves the Parties' proposed form and method of giving members of the Settlement Class notice of this action and the proposed settlement;

(d)     directs that notice be given to members of the Settlement Class in the proposed form and manner;

(e)     sets deadlines and procedures for persons and/or entities that fall within the class definition to exclude themselves, and for members of the Settlement Class to comment on the proposed settlement; and

(f)     schedules a fairness hearing to determine whether the settlement should be granted final approval and whether Plaintiffs' counsel should be awarded attorneys' fees and expenses.

(*See* [Proposed] Preliminary Approval Order, Joint Motion <u>Exhibit 2</u>.)

---

[2] As explained in more detail below, the claims of persons and entities who purchased O'Reilly 303 Tractor Hydraulic Fluid in Missouri have been settled on a class-wide basis pursuant to the Court's December 16, 2019 final-approval order in *Miller v. O'Reilly Automotive, Inc.*, Case No. 18-00687-CV-W-ODS (W.D. Mo.). Copies of the Court's preliminary and final-approval orders are attached to the Joint Motion as <u>Exhibits 4 and 5</u>, respectively, for ease of reference.

As described in detail in the Settlement Agreement, the Settlement provides significant monetary relief to the Settlement Class in a way that addresses the alleged issues underlying this case and compensates Settlement Class Members for damages they allegedly suffered. The Complaint alleges that O'Reilly 303 Tractor Hydraulic Fluid, the product underlying this action, was deceptively labeled, marketed, and manufactured, and that purchase and use of such product damage Settlement Class Members' tractors and other equipment. (*See* Compl. (Doc. #: 1) at ¶¶ 41-53, 72-81.) The Settlement provides for a Settlement Fund of $8,501,361.10. (*See* Settlement Agreement, Joint Mot. Ex. 1, at ¶ 36.) The Settlement Fund will provide Settlement Class Members with an estimated minimum settlement payment in an amount calculated to be between 30% and 41% of the purchase price for each unit of O'Reilly 303 Tractor Hydraulic Fluid purchased during the Class Period, with the precise amount dependent on the time and state in which each purchase was made. (*See id.* at ¶¶ 73-74 & Appx. A.) The distributions to Settlement Class Member may increase on a pro rata basis depending on the number of claims made and settlement checks cashed. (*See id.* at ¶ 75.) Defendants have also agreed to cease further sales of any tractor hydraulic fluid in the United States that is labeled by Defendants, or otherwise held out to customers and the public by Defendants, as "303" or as meeting specifications of only John Deere 303, as explained in more detail in the Settlement Agreement. (*See id.* at ¶ 38.)

In addition to establishing the Settlement Fund and agreeing to cease sales of certain types of tractor hydraulic fluids going forward, Defendants will separately pay Class Counsels' Court-awarded attorneys' fees and expenses, as well as the incentive awards to the Class Representatives, which payments will not reduce the amount of the Settlement Fund available to Settlement Class Members. (*See id.* at ¶¶ 37, 39-40.) Defendants will also advance, to the extent necessary, reasonable costs, fees, and expenses of the Settlement Administrator in providing notice to the

Settlement Class and administering the Settlement, subject to reimbursement from the Settlement Fund if funds remain after providing initial distributions to Settlement Class Members. (*See id.* at ¶¶ 51-52.)

The Settlement Agreement clearly addresses Plaintiffs' litigation objectives, provides a remedy for the alleged problems with the 303 THF product, stops its further manufacture and sale, provides legitimate and substantial relief to Settlement Class Members and, therefore, falls well within the range of appropriate outcomes so as to warrant approval. Indeed, the United States District Court for the Western District of Missouri recently granted preliminary and final approval of a substantially similar class-action settlement comprised of Missouri purchasers of O'Reilly 303 Tractor Hydraulic Fluid just last year. (*See* Prelim. and Final Approval Orders, Joint Mot. Exs. 4-5.) The terms of this Settlement should therefore be preliminarily approved and submitted to Class Members for their consideration, and a fairness hearing scheduled to determine whether the settlement warrants final approval. Based on the Settlement Agreement attached to the Joint Motion as <u>Exhibit 1</u>, with accompanying documents, and the Declaration of William W. Wickersham of RG/2 Claims Administration, LLC (the Settlement Administrator) attached to the Joint Motion as <u>Exhibit 3</u>, and the Declaration of Thomas V. Bender, lead Class Counsel, filed herewith, and the following Suggestions in Support, Plaintiffs respectfully request that the Court enter the Preliminary Approval Order attached to the Joint Motion as <u>Exhibit 2</u> , certify the Settlement Class for settlement purposes, approve the dissemination of notice, and set a final fairness hearing and related dates.

## II.     SUMMARY OF THE LITIGATION AND SETTLEMENT

### A.     Plaintiffs' Claims

Plaintiffs allege, among other things, that Defendants were negligent in the manufacture of, and unjustly enriched by, the sale of O'Reilly 303 Tractor Hydraulic Fluid, that warranties were breached and that the label for O'Reilly 303 Tractor Hydraulic Fluid was deceptive and misleading. (*See, e.g.,* Compl. (Doc. #: 1) at ¶¶ 41-53, 72-81.) Plaintiffs also allege that use of O'Reilly 303 Tractor Hydraulic Fluid in equipment causes damage to various parts of the equipment, including damage to the spiral gear in the drive, excess wear, seal leakage, high pump leakage, and damage from deposits, sludging and thickening. (*See id.* at ¶ 52(g).)

Plaintiffs assert such claims individually and purportedly on behalf of a putative class of purchasers defined as follows:

> All persons and other entities who purchased O'Reilly 303 Tractor Hydraulic Fluid in any State in the United States, other than Missouri, during the Class Period.

(*Id.* at ¶ 85.) Plaintiffs seek various categories of damages on behalf of themselves and the Class Members, including: (i) return of amounts paid to purchase O'Reilly 303 Tractor Hydraulic Fluid; (ii) alleged lost benefit of the bargain; (iii) alleged damages and harm to equipment in which O'Reilly 303 Tractor Hydraulic Fluid was allegedly used; (iv) punitive damages; and (v) attorneys' fees and costs. (*See id.* at ¶¶ 75, 81.)

### B.     Litigation History

### i.     *The Settled Missouri Class Action*

On July 20, 2018, plaintiffs Joe Miller and Kenny Higgs, represented by Class Counsel, initiated a class-action lawsuit against Defendants and O'Reilly Automotive, Inc. in the Circuit Court of Cass County, State of Missouri, Case No. 18CA-CC00153, asserting the above-described claims arising out of the alleged purchase and use of O'Reilly 303 Tractor Hydraulic Fluid.

5

Defendants timely removed that action to the United States District Court for the Western District of Missouri, Case No. 4:18-cv-687-ODS (the "Missouri Action"). On December 11, 2018, plaintiffs Joe Miller, Kenny Higgs, Raymond Bieri, and Don Sherwood filed their First Amended Complaint in the Missouri Action. The plaintiffs in the Missouri Action, on behalf of themselves and a putative class of persons and entities that purchased O'Reilly 303 Tractor Hydraulic Fluid in Missouri since July 20, 2013, asserted the above-described claims against Defendants for alleged violations of the Missouri Merchandising Practices Act, breach of warranty, fraudulent and negligent misrepresentations, negligence, and unjust enrichment.

As Thomas Bender, lead Class Counsel, explains in his accompanying declaration, Plaintiffs in the Missouri Action, through Class Counsel, and Defendants engaged in significant and extensive fact investigation and discovery, including, for example: Plaintiffs' counsel obtaining and reviewing documents from the Missouri Department of Agriculture, the State of Georgia and the State of North Carolina relating to the testing and evaluation of 303 tractor hydraulic fluids; Plaintiffs' retaining expert witnesses to review and analyze investigative and discovery materials and discuss the analysis with Plaintiffs' Counsel; Defendants and Plaintiffs serving and responding to multiple sets of written discovery requests; and Defendants' production of more than 30,000 pages of documents that Plaintiffs' counsel reviewed and analyzed, including e-mail communications and substantial technical documents on the composition, blending, testing, and labelling of O'Reilly 303 Tractor Hydraulic Fluid. (*See* Decl. of T. Bender, submitted herewith, at ¶ 4.)

Following these substantial investigative and discovery efforts, the parties in the Missouri Action, through counsel, engaged in extensive, arms-length negotiations, including a meditation in Kansas City, Missouri. After continued, post-mediation settlement discussions, the parties

reached a class-wide settlement of the Missouri Action, which was finally approved by the United States District Court for the Western District of Missouri on December 16, 2019. (*See id.* at ¶ 5; *see also* Final Approval Order, Joint Mot. Ex. 5.)

### ii.    *Subsequent Actions*

On April 4, 2019, Plaintiffs Adam Sevy and Shawn Hornbeck, on behalf of themselves and a putative class of persons and entities that purchased O'Reilly 303 Tractor Hydraulic Fluid in Kansas, initiated a class-action lawsuit against Defendants in the United States District Court for the District of Kansas, Case No. 2:19-cv-02192-DDC-GEB, asserting claims for damages under Kansas law arising out of the purchase and use of O'Reilly 303 Tractor Hydraulic Fluid.

On June 6, 2019, Plaintiff Wayne Rupe, on behalf of himself and a putative class of persons and entities that purchased O'Reilly 303 Tractor Hydraulic Fluid in Iowa, initiated a class -action lawsuit against Defendants in the United States District Court for the Southern District of Iowa, Case No. 4:19-cv-00164-RGE-SBJ, asserting claims for damages under Iowa law arising out of the purchase and use of O'Reilly 303 Tractor Hydraulic Fluid.

On June 25, 2019, Plaintiff David Guest, on behalf of himself and a putative class of persons and entities that purchased O'Reilly 303 Tractor Hydraulic Fluid in Alabama, initiated a class-action lawsuit against Defendants in Jefferson County, Alabama, Case No. 01-CV-2019-902837, asserting claims for damages under Alabama law arising out of the purchase and use of O'Reilly 303 Tractor Hydraulic Fluid, which action Defendants timely removed to the United States District Court for the Northern District of Alabama on or about July 24, 2019, becoming Case No. 2:19-CV-01172-RDP.

On September 6, 2019, Plaintiff Robert Thiry, on behalf of himself and a putative class of persons and entities that purchased O'Reilly 303 Tractor Hydraulic Fluid in Texas, initiated a

class-action lawsuit against Defendants in the United States District Court for the Southern District of Texas, Case No. 4:19-cv-03366, asserting claims for damages under Texas law arising out of the purchase and use of O'Reilly 303 Tractor Hydraulic Fluid.

Finally, on or about December 30, 2019, Plaintiffs Arno Graves, David Guest, Shawn Hornbeck, Wayne Rupe, Adam Sevy, Robert Thiry, Ron Nash, Todd Vohs, Bryan Nelms, Larry Muhs, Anthony Shaw, Rusty Shaw, Tim Sullivan, Roger Bias, Robert Withrow, and Ellen Allicks d/b/a Allicks Excavating, on behalf of themselves and a putative class of persons and entities that purchased O'Reilly 303 Tractor Hydraulic Fluid throughout the United States, excluding Missouri, initiated the instant class-action against Defendants, asserting claims for damages under the laws of various different states in which O'Reilly 303 Tractor Hydraulic Fluid was purchased, including, where appropriate, under state consumer-protection laws, arising out of the purchase and use of that product. (*See* Class Action Compl. (Doc. #: 1) at Count I-VIII.)

The claims from each of the Kansas, Iowa, Alabama, and Texas actions have been transferred to the Western District of Missouri, and three of them have been re-captioned as follows: *Sevy*, *et al. v. Ozark Automotive Distributors, Inc.*, *et al.,* Case No. 4:20-cv-00083-BCW (W.D. Mo.); *Guest*, *et al., v. O'Reilly Automotive, Inc., et al.*, Case No. 4:20-cv-00069-DGK (W.D. Mo.); *Thiry v. Omni Specialty Packaging, LLC*, Case No. 4:20-cv-00132-DGK (W.D. Mo.)[3] Pursuant to the terms of the Settlement Agreement, Plaintiffs, in cooperation with Defendants, will move to consolidate those four actions into this one. Plaintiffs in this action include sixteen (16) Class Representatives who purchased the O'Reilly 303 Tractor Hydraulic Fluid produce in the following states: Kansas, West Virginia, Alabama, Arkansas, Iowa, Georgia, Kentucky, and Texas.

---

[3] The remaining case, *Rupe*, has not yet been processed and assigned a case number in the Western District of Missouri.

(*See* Compl. (Doc. #: 1) at ¶¶ 54-71.)  In light of the substantial risks and extended duration of litigation, and consistent with the recent (December 2019) final approval of the class-action settlement for purchasers of O'Reilly 303 Tractor Hydraulic Fluid in Missouri, Plaintiffs have agreed to a class-wide settlement that provides substantial benefits to Class Members and sooner than they could be obtained through, and without the substantial risks of, litigation.

### C.    The Proposed Settlement

#### 1.    *The Proposed Settlement Class*

Plaintiffs now seek preliminary approval of the Parties' proposed Settlement.  The Settlement Class is defined as follows in the Settlement Agreement:

> all persons and other entities who purchased O'Reilly 303 Tractor Hydraulic Fluid during the Class Period, as defined above, in the United States, excluding purchases made in Missouri, and also excluding purchases made for resale.

(Settlement Agreement, Joint Mot. Ex. 1, at ¶ 28.) The Settlement Class also excludes: "Defendants, including any parent, subsidiary, affiliate or controlled person of Defendants; Defendants' officers, directors, agents, employees and their immediate family members; as well as the judicial officers assigned to this litigation and members of their staffs and immediate families." (*See id.*)

The Class Period is determined by the longest applicable statute of limitations under the law of the state in which any given unit of O'Reilly 303 Tractor Hydraulic Fluid was purchased for the asserted claims—i.e., breach of warranty, fraud, unjust enrichment, personal property damage, and violation of any applicable consumer-protection statute permitting class-wide relief. (*See* Settlement Agreement, Mot. Ex. 1, at ¶ 6 & Appx. A.) Appendix A to the Settlement Agreement lists the following information, on a state-by-state basis, for each state in which a purchase of O'Reilly 303 Tractor Hydraulic Fluid was made during the Class Period (excluding

Missouri): (i) the longest applicable statute of limitations under any applicable consumer-protection statute, common-law claim, or warranty claim; (ii) the claim or claims associated with that limitations period; (iii) the classification of each state's consumer protection statute, if any (i.e., Group B or C); and (v) the statute of limitations for any applicable consumer protection statute. (*See id.* at Appx. A.) Further, the supporting citations for that information are set forth in Appendix A to these Suggestions in Support.

Plaintiffs request that the Court appoint the sixteen (16) named Plaintiffs as class representatives. Plaintiffs also request that the Court appoint Plaintiffs' counsel to serve as counsel for the Settlement Class.

### 2. *Settlement Payments*

Under the terms of the Settlement Agreement, Defendants will establish a Settlement Fund in the amount of $8,501,361.10, which represents more than 33% of the total net sales of O'Reilly 303 Tractor Hydraulic Fluid in the United States (other than in Missouri) during the Class Period. (*See* Settlement Agreement, Mot. Ex. 1, at ¶ 36.) The Settlement Fund will provide each Settlement Class Member with an estimated minimum payment in an amount calculated to be between 30% and 41% of price paid for units of O'Reilly 303 Tractor Hydraulic Fluid purchased by each such Settlement Class Member during the Class Period. (*See id.* at ¶¶ 73-74.) As explained more fully below, the variation in award percentages is based on differences in state laws that could potentially impact the strength of the asserted claims and/or the available damages, including state consumer-protection statutes.

If there is any amount remaining in the Settlement Fund after the Settlement Administrator (i) makes distributions to Settlement Class Members, (ii) sets aside an amount sufficient to pay any taxes or tax-related expenses owed by the Settlement Fund, and (iii) sets aside an amount to pay for, and/or reimburse Defendants for, notice and settlement administration costs and expenses,

each Settlement Class Member shall receive a pro rata increase of his, her, or its distribution amount. (*See id.* at ¶¶ 73-75.)

 3. *Notice and Administration Costs*

In addition to establishing the Settlement Fund, Defendants will advance, to the extent necessary, the reasonable costs, fees, and expenses of the Settlement Administrator in providing notice to the Settlement Class and administering the settlement. (*See id.* at ¶¶ 51-52.) If there is an amount remaining in the Class Settlement Fund after allocating an amount sufficient to pay each qualifying Settlement Class Member his, her, or its original distribution amount, and allocating an amount sufficient to pay any taxes and tax-related expenses owed by the Settlement Fund, the that remaining amount will reimburse Defendants for the costs and fees of the Settlement Administrator that Defendants advanced, and/or pay any then outstanding administration fees and costs that remain. (*See id.*) At the time of filing these Suggestions in Support, the costs of notice and settlement administration are estimated to be approximately $476,000.00

 4. *Named Plaintiffs' Incentive Awards, Attorneys' Fees and Expenses*

Pursuant to the Settlement Agreement, Plaintiffs' counsel will separately apply for incentive awards for the Class Representative and for an award of attorneys' fees and reimbursement of expenses to Class Counsel. Defendants have agreed not to contest and to separately pay, in addition to the Settlement Fund and the fees and expenses of settlement administration, the following amounts, if awarded by the Court: (a) a $5,000.00 incentive award to each of the sixteen (16) Class Representatives, (b) an approximate 25% contingency fee to Class Counsel, based on the $8,501,361.10 Class Settlement Fund, in the amount of $2,105,340.28, and (c) $25,000.00 to Class Counsel for expense reimbursements. (*See* Settlement Agreement, Mot. Ex. 1, at ¶¶ 36-37, 39-40.)

11

## III. ARGUMENT

### A. The Class Action Settlement Approval Process

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, a class action may not be dismissed, compromised or settled without court approval. In considering granting its approval, the Court is to consider that the law favors settlement, especially in class-action cases and other complex matters where significant resources can be conserved by avoiding the time, costs, and rigor of prolonged litigation. *Little Rock School Dist. v. Pulaski County Special School Dist.*, 921 F.2d 1371 (8th Cir. 1990). "[S]ettlement agreements are presumptively valid." *Id.* at 1391. The standard for review is for abuse of discretion. *Id.* In reviewing decisions approving such settlements, the appellate courts simply ask "whether the District Court considered all relevant factors, whether it was significantly influenced by an irrelevant factor, and whether in weighing the factors it committed a clear error of judgment." *Id.*

"In approving a class settlement, the district court is to 'consider whether it is fair, reasonable, and adequate.'" *Pollard v. Remington Arms Co., LLC*, 896 F.3d 900, 907 (8th Cir. 2018) (quoting *Prof'l Firefighters Ass'n of Omaha, Local 385 v. Zalewski*, 678 F.3d 640, 648 (8th Cir. 2012) and *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1176 (8th Cir. 1995)). "'Great weight is accorded [the district court's] views because [the judge] is exposed to the litigants, and their strategies, positions and proofs. [The judge] is aware of the expense and possible legal bars to success. Simply stated, [the judge] is on the firing line and can evaluate the action accordingly.'" *Id.* (quoting *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 123 (8th Cir. 1975) and *Ace Heating & Plumbing Co. v. Crane Co.*, 453 F.2d 30, 34 (3d Cir. 1971)). The Eighth Circuit has noted, "We will set aside a judicially approved class action settlement 'only upon a clear showing that the district court abused its discretion.'" *Id.*

The first step in the approval process is for the Court to make a preliminary fairness decision. "Preliminary approval does not require the court to decide the ultimate question whether a proposed settlement is fair, reasonable, and adequate. At this stage, the issue is whether the proposed settlement falls within the range of fairness so that notice of the proposed settlement should be given to class members and a hearing scheduled to consider final approval." *Komoroski v. Utility Services Partners Private Label, Inc.*, Case No. 4:16-CV-00294-DGK, 2017 WL3261030 at *1 (July 31, 2017 W.D. Mo.).

At the preliminary approval stage, the Court should make a preliminary evaluation of the proposed terms. If that evaluation does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives or segments of the class, or excessive compensation for attorneys, and if it appears to fall within the range of possible approval the settlement should be given preliminary approval. If the Court finds preliminary approval is warranted, the Court should direct that notice be provided to the class members and hold a formal fairness hearing where formal arguments can be made both in support of and in opposition to the settlement if class members so choose. *See* Manual for Complex Litigation, Fourth, § 21.632.

At the preliminary approval stage, the Court does not make a final decision on the merits of the proposed settlement; rather, it merely evaluates whether (i) the settlement agreement was negotiated at arms' length, (ii) there has been sufficient investigation and discovery to enable counsel and the Court to act intelligently and (iii) there are any obvious deficiencies in the settlement agreement. *See*, NEWBERG ON CLASS ACTIONS, § 11.25.

This Court's review for preliminary approval should also include consideration of whether it appears the proposed settlement class can meet the requirements of Rule 23(a) and (b)(3). The

Court should conduct such review bearing in mind that it is only considering whether there is probable cause to believe that the class can be certified for purposes of settlement and that it is not making a determination as to whether the case could be maintained as a class action if the settlement fell through and litigation were required, nor is it making a final determination of certification for purposes of settlement. A final fairness hearing is the mechanism by which the Court finally evaluates the parties' settlement in light of the strong judicial and societal policy favoring settlements. Finally, the Court should also consider parties' views of the case and the probability of success on class certification and the merits. "An integral part of the strength of a case on the merits is a consideration of the various risks and costs that accompany continuation of the litigation." *Donovan v. Estate of Fitzsimmons*, 778 F.2d 298, 309 (7th Cir. 1985).

> **B.** **Preliminary Approval of The Settlement is Appropriate**
>
> > 1. *Adequate Investigation and Discovery was Conducted*

Class Counsel conducted adequate discovery and performed a sufficient investigation into the underlying basis of the claims in order to make an intelligent evaluation of the possible outcome of the litigation and the settlement terms. In connection with this overall litigation, Class Counsel performed substantial discovery including serving significant written discovery and obtaining from Defendants more than 30,000 pages of documents. (*See* Decl. of T. Bender, submitted herewith, at ¶ 15.) Class counsel also obtained documents and test results from the Missouri Department of Agriculture and the States of Georgia and North Carolina, as well as consulting with an expert in the tractor hydraulic fluid field. (*See id.*) Class Counsel also performed extensive research and analysis of the legal principles applicable to the claims against Defendants and class certification of those claims, as well as to the potential defenses to those claims and certification. (*See id.* at ¶ 14.)

Although settlement was achieved at an early stage of this litigation, it was reached with full information and having conducted substantial discovery and investigation in, and participating in mediation and extensive settlement negotiations in, the Missouri Case, which involved the same product and Defendants. (*See id.* at ¶¶ 3-5, 13-17.) Plaintiffs' Counsel performed all necessary work to prosecute and evaluate the case prior to reaching a settlement with Defendants. (*See id.* at ¶¶ 3-18.) There should be no question that Plaintiffs had sufficient information when settlement was reached.

## 2. *The Settlement Resulted from Arms' Length Negotiation*

The Settlement Agreement before the Court is the product of intensive, arm's-length negotiations. (*See id.* at ¶¶ 5, 16-17.) In the underlying Missouri Action, the negotiations included a formal mediation with experienced class-action mediator Phil Miller. (*See id.* at ¶ 5.) After the resolution of the Missouri Action and during the initial stages of the Kansas, Iowa, Alabama, and Texas actions, further and extended negotiations occurred which eventually led to this settlement, which is consistent with the form and substance of the approved class-action settlement in the Missouri Action, modified as appropriate to account for the laws of different states implicated by the present action. (*See id.* at ¶¶ 16-17; Settlement Agreement, Joint Mot. Ex. 1, at ¶ 74 & Appx. A.) The negotiations were informed by the great deal of document discovery, investigation, legal research, analysis, and case preparation undertaken by the Parties prior to that point. (*See id.* at ¶¶ 4 , 14-16.) Negotiations were conducted by Plaintiffs' counsel highly experienced in pursuing and resolving complex litigation and class-action matters and Defendants' counsel similarly experienced in defending such cases. Accordingly, the settlement is entitled to a preliminary presumption of fairness. *See, e.g.*, *In re BankAmerica Corp. Securities Litig.*, 210 F.R.D. 694, 700 (E.D. Mo. 2002) ("In evaluating the settlement, the Court should keep in mind the unique ability of class and defense counsel to assess the potential risks and reward of litigation; a presumption

of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery."); *In re Austrian & German Bank Holocaust Litig.*, 80 F.Supp. 2d 164, 173-74 (S.D.N.Y. 2000) ("If the Court finds that the Settlement is the product of arm's length negotiations conducted by counsel knowledgeable in complete class litigation, the settlement will enjoy a presumption of fairness. Once the settlement is presumed fair, it is not for the court to substitute its judgment as to a proper settlement for that of such competent counsel . . . .")

3. *The Proposed Settlement Provides Substantial Monetary Benefits To Class Members And Is Well Within the Range of Possible Approval*

The Settlement provides substantial monetary relief to Class Members and accounts for certain differences in the laws of the states in which those Class Members purchased O'Reilly 303 Tractor Hydraulic Fluid.

In the Eighth Circuit, a multistate class-action settlement need not account for differences in state laws in order to be approved. *See, e.g., Rawa v. Monsanto Co.*, 934 F.3d 862, 869 (8th Cir. 2019) ("A nationwide settlement need not account for differences in state laws"); *Pollard v. Remington Arms Co., LLC*, 896 F.3d 900, 907 (8th Cir. 2018) (district court did not abuse its discretion in approving class-action settlement of consumers' products-liability action against rifle manufacturer) ("We have found that a settlement agreement is not rendered unfair because it does not account for differences in state laws."); *Keil v. Lopez*, 862 F.3d 685, 700 (8th Cir. 2017) (settlement of consumers' class action against pet food manufacturer was fair, reasonable, and adequate, even though it did not account for differences among states' consumer-protection laws) ("the fact that the settlement agreement did not account for differences in state laws does not render it unfair.").

Although not required by Eighth Circuit precedent, the Settlement here *does* account for differences in applicable state laws that could impact the strength of the asserted claims and recoverable damages. More specifically, for purposes of calculating distribution amounts, each class-member purchase of O'Reilly 303 Tractor Hydraulic Fluid within the Class Period is assigned to one of three groups (A, B, or C) based on the applicable consumer-protection statute, if any, and its available remedies. Purchases in Group A receive a settlement amount calculated at 30.51% of the O'Reilly 303 THF purchase price. Purchases in Group B receive a settlement amount calculated at 38.00% of the O'Reilly 303 THF purchase price. And purchases in Group C receive a settlement amount calculated at 41.00% of the O'Reilly 303 THF purchase price. Any given Class Member can have purchases in one or more groups, depending on the state in which the purchase was made and the date on which it was made. The following table explains the groupings and associated percentages.

| O'Reilly 303 THF Purchase | Group | Percentage of Purchase Price |
|---|---|---|
| Purchase of O'Reilly 303 THF: (i) by a Settlement Class Member in a state that does <u>not</u> have a consumer protection statute, but made within the longest applicable statute of limitations for one or more common law and/or warranty claims under that state's applicable law; (ii) by a Settlement Class Member in a state whose consumer protection statute does <u>not</u> permit class-wide relief, but made within the longest applicable statute of limitations for one or more common law and/or warranty claims under that state's applicable law; and (iii) by a Settlement Class Member in a state with a consumer protection statute that permits class wide relief, but where the purchase was made <u>outside</u> the applicable statute of limitations for that consumer protection statute (but within the longest applicable statute of limitations for one or more common law and/or warranty claims under that state's applicable law). | A | 30.51% |
| Purchase of O'Reilly 303 THF by a Settlement Class Member in a state that has a consumer protection statute permitting class actions and recovery of actual damages, and made within the statute of limitations for that statute. | B | 38.00% |

17

| | | |
|---|---|---|
| Purchase of O'Reilly 303 THF by a Settlement Class Member in a state that has a consumer protection statute permitting class actions and recovery of treble or double damages, and made within the statute of limitations for that statute. | C | 41.00% |

(*See id.* at ¶ 74.) As the table illustrates, the Settlement is structured to provide greater relief (38% of the purchase price) to purchases of O'Reilly 303 THF subject to a consumer-protection statute permitting class-wide relief, than to purchases subject to only common-law or statutory warranty claims (30.51% of the purchase price.) Consumer-protection statutes, by their nature, generally lessen the burden on consumer-plaintiffs to recover, thus making their claims stronger or more likely to potentially succeed—including, for example, by eliminating the need to prove the defendant's intent or the consumer's reliance on alleged misrepresentations, broadening the scope of alleged acts that are considered actionable, and awarding prevailing claimants attorneys' fees. Within the group of purchases covered by consumer-protection statutes permitting class-wide relief, the Settlement provides even greater relief (41% of the purchase price) to purchases that fall within a statute providing double or treble damages, because class members who make such purchases could potentially recover more on their claims than class members' whose claims fall outside those statutes. Appendix A to the Settlement Agreement lists, by state, the applicable statute of limitations for the asserted claims, available remedies under state consumer-protection statutes, and the classification of each such statute (i.e., Group B or C). (*See id.* at Appx. A.) Supporting citations are set forth in the Appendix A to these Suggestions in Support.

As explained above, the Class Period is not uniform across all covered states. Rather, it is defined as the longest applicable statute of limitations under the law of the state in which any given unit of O'Reilly 303 Tractor Hydraulic Fluid was purchased with respect to the asserted claims— i.e., claims for breach of warranty, fraud, unjust enrichment, personal property damage, and for violation of any applicable consumer-protection statute permitting class-wide relief. (*See*

18

Settlement Agreement, Mot. Ex. 1, at ¶ 6 & Appx. A.) By applying the longest applicable statute of limitations under the laws of each state in with the product was purchased, the Settlement includes in the class all potential claimants. *See, e.g., Rawa v. Monsanto*, 2018 WL 2389040, at *2 (E.D. Mo. May 25, 2018), *aff'd* 934 F.3d 862 (8th Cir. 2019) (granting final approval to nationwide consumer class-action settlement based on sale of Roundup products where class was defined as "All persons in the United States who, during the Class Period, purchased in the United States . . . ." and defined "Class Period" as "a time period not to exceed the applicable statute of limitations for the false advertising law in the state where each claimant is domiciled, triggered by the date complaint was filed").

If there is any amount remaining in the Settlement Fund after (i) calculating the Settlement Class Members' initial distribution amounts pursuant to the forgoing groupings, (ii) setting aside an amount sufficient to pay any taxes or tax-related expenses owed by the Fund and (iii) setting aside an amount sufficient to pay, or reimburse Defendants for payment of, notice and administration costs, each Settlement Class Member will receive a pro rata increase of his, her, or its distribution amount. Further, Class Counsels' fees and expenses, as well as the incentive awards to Class Representatives, are to be paid separately by Defendants such that they will not detract from the Settlement Fund. Accordingly, despite substantial obstacles to obtaining class-wide relief in contested litigation, this Settlement, if approved, will provide immediate and substantial monetary relief to Settlement Class Members in a manner that accounts for differences of applicable state laws. (Settlement Agreement, Mot. Ex. 1, at ¶ 75.)

The Settlement also provides significant non-monetary relief. Defendants have agreed to refrain from selling any tractor hydraulic fluid in the United States that is labeled by Defendants, or otherwise held out to customers and the public by Defendants, as "303" or as meeting

19

specifications of only John Deere 303—the crux of Plaintiffs' claims. (*See* Settlement Agreement, Joint Mot. Ex. 1, at ¶ 38.) Defendants have further agreed they will not list John Deere 303 on the label of a tractor hydraulic fluid product sold in the United States unless the product meets a verifiable John Deere specification, such as JD20A/B or JD20C/D. (*See id.*) These agreements effectively end the alleged practices underlying Plaintiffs' claims and obviate the alleged potential for future harm to equipment in which fluids like O'Reilly 303 THF are used.

The class-wide financial and non-financial relief is a significant victory for Settlement Class Members given the amount of money that will be available to each Class Member and the uncertainty of whether Plaintiffs would have prevailed on class certification, at trial, and on appeal. Although Plaintiffs believe they would have been able to make sufficient showings at class certification, at trial, and on appeal, Defendants intended to vigorously contest this matter, including at class certification, summary judgment, trial, and on appeal of any appealable rulings in favor of Plaintiffs. Accordingly, if the claims asserted in the action were not settled by voluntary agreement among the parties, future proceedings (including appeals) would be protracted and expensive, involve highly complex legal and factual issues relating to, among other things, class certification, liability, and damages, and would involve substantial uncertainties, delays, and other risks inherent in litigation. In light of these positions and the risks of litigation for both sides, the Settlement provides substantial benefits to Settlement Class Members and represents a reasonable resolution of the claims on a class-wide basis.

When these risks, as well as the uncertainties and risks inherent in any litigation, are balanced against the benefits provided by the Settlement – here cash payments and other benefits to Settlement Class Members – Plaintiffs submit that the Settlement easily falls within the range of possible final approval.

Finally, the law favors settlement, especially in class actions and other complex cases. By their very nature, "[c]lass actions, in general, place an enormous burden of costs and expense upon [ ] parties." *Marshall v. National Football League,* 787 F.3d 502, 512 (8th Cir. 2015) (internal quotations and citation omitted); *see also In re Uponor, Inc.*, 716 F.3d at 1063 (same). And in complex cases such as this one, "the enormity of the burden is obvious." *Marshall*, 787 F.3d at 512. Here, the Class Members receive real value in exchange for the release of their claims. In addition, approval of the Settlement will avoid significant litigation costs that likely would have been incurred in hard-fought, complicated, and expensive litigation likely requiring years to complete. In addition to sparing both parties from the expenditure of fees and costs, the Settlement preserves the judicial resources of this Court.

### 4. *Defendants Receive a Reasonable Release of Liability*

In return for the consideration to be provided under the Settlement, Defendants receive a reasonable release of liability related to the manufacture and sale to Settlement Class Members of O'Reilly 303 Tractor Hydraulic Fluid. Paragraph 44 of the Settlement Agreement specifically provides as follows:

> Plaintiffs, individually, on behalf of the members of the Settlement Class, and on behalf of Plaintiffs' respective partners, agents, representatives, heirs, executors, personal representatives, successors, and assigns (the "Releasing Parties"), hereby release and forever discharge Defendants, together with their respective past, present, and future officers, employees, agents, representatives, distributors, downstream retail customers and/or resellers, attorneys, accountants, insurers, predecessors, successors, assigns, legal representatives, parent companies, subsidiaries and affiliates, including, but not limited to, O'Reilly Automotive, Inc. (the "Released Parties") from any and all claims, causes of action, suits, obligations, debts, demands, agreements, promises, liabilities, damages, losses, controversies, costs, expenses, and attorneys' fees of any nature whatsoever, whether asserted or not asserted, arising out of or relating to the purchase and/or use of O'Reilly 303 Tractor Hydraulic Fluid in any state in the United States other than Missouri.

(*See* Settlement Agreement, Joint Mot. Ex. 1, at ¶ 44.) This release is tailored to cover purchase and use of O'Reilly 303 Tractor Hydraulic Fluid, the gravamen of Plaintiffs' claims, and is not overly broad.

        5.        *Plaintiffs' Counsel and the Class Representatives Support the Settlement*

Through their informal investigation and the substantial document production and review in this litigation, as well as through their consultations with experts, Plaintiffs' counsel have gained a comprehensive knowledge of the facts relating to the respective claims and defenses and have sufficient evidence on which to base an intelligent assessment of the settlement terms. Based on their knowledge of the case and the applicable law, as well as their experience in similar complex litigation and class actions, Plaintiffs' counsel believe the settlement is fair, reasonable and adequate. The named Plaintiffs have also approved the settlement.

        6.        *The Requirements of Fed. R. Civ. P. 23(a) and (b)(3) are Satisfied for Settlement Purposes*

This Court's review for preliminary approval also considers whether the requirements of Rule 23(a) and (b)(3) are satisfied for purposes of certifying the Settlement Class and administering the settlement. The Settlement Class satisfies these requirements for settlement purposes. There are estimated to be more than 285,500 members of the proposed Settlement Class. The claims of those persons and/or entities arise from the purchase and use of O'Reilly 303 Tractor Hydraulic Fluid in the United States, excluding Missouri, during the Class Period. Application of the laws of multiple states does not pose any issue with respect to predominance, because any potential manageability concerns that application of multiple states' laws may engender for trial are not present in a settlement. *See Amchem Prod., Inc. v. Windsor,* 521 U.S. 591, 620–21 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems"); *Sullivan v. DB*

*Investments, Inc.*, 667 F.3d 273, 303–04 & n. 30 (3d Cir. 2011) (affirming approval of nationwide class-action settlement of purchasers of diamonds brought under federal and state antitrust and consumer protection laws) ("The proposed settlement here obviates the difficulties inherent in proving the elements of varied claims at trial or in instructing a jury on varied state laws, and 'the difference is key.' Accordingly . . . state law variations are largely 'irrelevant to certification of a settlement class'").

Further, the sixteen (16) named Plaintiffs claim to have bought and used O'Reilly 303 Tractor Hydraulic Fluid. They are members of the Settlement Class asserting claims typical of Settlement Class Members, and they do not have interests that are contrary to, or in conflict with, interest of the Settlement Class Members for purposes of settlement. The named Plaintiffs have also retained experienced counsel and will protect fully and adequately the interests of the Settlement Class members.

7.      *The Proposed Method and Content of Class Notice are Appropriate*

Due Process and Rule 23 require that the court "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Similarly, Rule 23(e)(1) calls for notice to be provided in a "reasonable manner to all class members who would be bound by the proposal[.]" Fed. R. Civ. P. 23(e)(1)(B). The notice must contain specific information in plain, easily understood language, including the nature of the action and the rights of class members. Fed. R. Civ. P. 23(c)(2)(B)(i)-(vii).

To ensure that the notice satisfies the requirements of due process and Rule 23 in both form and content, the Parties have worked closely with RG/2 Claims Administration, LLC ("RG/2" or the "Settlement Administrator") to develop a comprehensive and substantial notice plan. (*See* Decl. of W. Wickersham, Motion Exhibit 3, at ¶¶ 2-28.) RG/2 specializes and has substantial

experience in providing notice and administrative services in class-action litigation. (*See id.* at ¶¶ 2-3 & Ex. A.) The Parties propose that the Court appoint RG/2 to serve as the Settlement Administrator. The notice plan developed by the Parties and RG/2 is comprised of two primary components: (i) direct notice; and (ii) publication notice.

First, direct notice. RG/2 estimates it will be able to provide direct notice of the settlement through U.S. Mail or e-mail to approximately 189,600 or more members of the Settlement Class, estimated to comprise approximately 66 percent of the total members of the Settlement Class, and to be responsible for approximately 78 percent of both the total claims amount and the total sales in dollars of O'Reilly 303 Tractor Hydraulic Fluid during the Class Period. (*Id.* at ¶ 16.) The direct-notice campaign will consist primarily of direct-mail notice, with some notice distributed by e-mail.

RG/2 will provide direct-mail notice via U.S. First-Class Mail to what is estimated to be approximately 181,200 or more members of the Settlement Class, estimated to comprise 63 percent of the total members of the Settlement Class, and to be responsible for approximately 76 percent of both the total claims amount and the total sales in dollars of O'Reilly 303 Tractor Hydraulic Fluid during the Class Period. (*See id.* at ¶ 9.) To accomplish this substantial and expansive direct-mail notice, Defendants will provide the Settlement Administrator, to the extent available, the name and last known address of each member of the Settlement Class and, where available, for each member of the Settlement Class the number, size, and date of O'Reilly 303 Tractor Hydraulic Fluid units purchased during the Class Period. (*See id.* at ¶ 11.) The Settlement Administrator will, where possible, complete the name and address information for any members whose information is incomplete. (*See id.* ¶ 12.) The Settlement Administrator will then mail by bulk mailing the Mailed Notice in substantially the form filed herewith as Exhibit 1-C to the Joint Motion to the

last known mailing address of each member of the Settlement Class for whom such information is available, which is estimated to be approximately 181,200 members of the Settlement Class. (*See id.* at ¶ 13.) The Mailed Notice will summarize the settlement, list the class member's purchases of O'Reilly 303 THF during the Class Period, if reasonably available, and direct Settlement Class Members to a website from which they may obtain more detailed information and documents, including, among other things, a Claim Form, in substantially the form filed herewith as Exhibit1-F to the Joint Motion; and, (ii) a Request for Correction Form in substantially the form filed herewith as Exhibit 1-G to the Joint Motion. (*See id.* at ¶ 14.) If a member of the Settlement Class believes the purchase information provided is not accurate or complete, the class member can complete the Request for Correction Form and submit it to the Settlement Administrator for consideration.  (*See* Request for Correction Form, Mot. Ex. 1-G.)

In addition, RG/2 will transmit an electronic copy of the Mailed Notice described in the preceding paragraph to the approximately 8,400 or more Settlement Class Members for whom Defendants have e-mail contact information, but no direct mailing information. (*Id.* at ¶ 15.)

Second, publication notice will be provided to the approximately 96,000 or more members of the Settlement Class for whom direct mailing or e-mail information cannot reasonably be located. (*Id.* at ¶ 17.) Most or all of these purchases occurred in-person at O'Reilly stores during the Class Period for which no name or contact information was provided by the customer. (*See id.* at ¶ 18.) Those class members comprise what is estimated to be 34 percent of the total Settlement Class, and are estimated to be responsible for approximately 22 percent of both the total claim amount and the total sales in dollars of O'Reilly 303 Tractor Hydraulic Fluid during the Class Period, for whom direct mailing and e-mail information cannot reasonably be located.  (*See* ¶ 17.) This form of notice will be accomplished through print publications and in-store notice.

With respect to print publications, RG/2 will cause the notice in substantially the form of the exemplars attached to Mr. Wickersham's Declaration as Exhibit C (the "Publication Notice") to be published in seven regional publications, and three nationally-based publications, targeted at farmers and the agriculture community—the expected demographics of persons who purchased O'Reilly 303 Tractor Hydraulic Fluid.  (*Id.* at ¶ 19 & Exs. B-C.) A list of the publications and expected circulation numbers are contained in the Notice Plan attached to Mr. Wickersham's Declaration as Exhibit B. (*See id.* & Ex. B.)  The regional publications were selected to target states with higher volumes of O'Reilly 303 Tractor Hydraulic Fluid sales to Class Members, including Alabama, Arkansas, California, Mississippi, Oklahoma, Tennessee, and Texas. (*See id.* at ¶ 20.) There are estimated to be approximately 168,000 or members of the Settlement Class in these seven states who account for an estimated 59 percent of the total settlement claim amount. (*Id.*)  The Publication Notice will be published once in each of the above-referenced publications on or after the date the direct-mail notice is sent by bulk mailing. (*Id.* at ¶ 21.) It will advise readers of the nature of the action, the definition of the Settlement Class, the claims asserted in the action, that Settlement Class Members may enter an appearance through counsel, that the Court will exclude from the Settlement Class any member who requests exclusion, the deadline by which exclusion must be requested, and the binding effect of a class judgment on Settlement Class Members. (*Id.*)  It will also direct Settlement Class Members to a website from which they may obtain more detailed information and documents, including, among other things, a Claim Form attached to the Settlement Agreement as Exhibit F; and, (ii) a Request for Correction Form attached to the Settlement Agreement as Exhibit G. (*Id.*)  Collectively, the print publications are expected to reach over 2.3 million subscribers and newsreaders nationwide, including approximately 1.2 million in the seven states with higher sales volumes. (*See id.* at ¶ 23.)

In-store notice will also be made. (*See id.* at ¶¶ 25-26 & Exhibit D, Aff. of M. Pickering, at ¶¶ 2-4.) More specifically, and as set forth in Mr. Pickering's affidavit, after preliminary approval of the Settlement, O'Reilly will post notice of the settlement in substantially the form attached to Mr. Pickering's affidavit as Exhibit 1 in approximately 1,614 O'Reilly stores throughout the country that, together, account for 80 percent or more of both the total claim amount under the settlement and of O'Reilly 303 Tractor Hydraulic Fluid sales to class members. (*See* Aff. of M. Pickering, Mot. Ex. 2-D, at ¶¶ 3-4.) As Mr. Pickering explains in his affidavit, O'Reilly will post notice in those stores by placing an 8 ½ x 11 inch copy of the notice in substantially the form attached to Mr. Pickering's affidavit as Exhibit 1 in the center of a wire display rack situated in a plainly visible location at the front of each store near the cash registers. (*See id.* at ¶ 4 & Ex. 1.) The notice will be displayed for a period of ninety days. (*Id.*) A photograph depicting the anticipated location and appearance of the posting in each store is attached as Exhibit 2 to Mr. Pickering's affidavit. (*Id.* at Ex. 2.)

Electronic notice will also be provided. The Settlement Administrator will create and maintain an operating website that: (i) provides members of the Settlement Class with general information about the Settlement, answers to frequently asked questions, important dates and deadline information, and a summary of Settlement benefits; (ii) contains downloadable copies of the Preliminary Approval Order, Long Form Class Notice, the Settlement Agreement, Claim Form, Request for Correction Form, and, when filed, Class Counsels' motions for an attorneys' fees, costs, and for incentive awards for the Class Representatives; (iii) posts any subsequent notices agreed upon by the parties; and (iv) allows members of the Settlement Class to submit claims. (*See id.* at ¶ 27.) The Settlement Administrator will also make available a toll-free telephone number that will provide information to members of the Settlement Class and any other persons seeking

information about the Settlement, as well as instructions on how to participate in the Settlement. (*See id.* at ¶ 28.)  The toll-free telephone number will be staffed by live operators during normal business hours, will be fully automated, and will operate 24 hours per day, seven days per week. (*See id*.)   Callers will also have the option to leave a message in order to speak with an RG/2 representative, who will return their call within 24 hours. (*See id*.)

Considered as a whole, the comprehensive proposed notice plan summarized above, and described in greater detail in the Settlement Administrator's declaration filed herewith, is calculated to reach a substantial majority of the members of the Settlement Class, and provides the best notice practicable under the circumstances, thus satisfying the requirements of the Due Process Clause of the United States Constitution and Fed. R. Civ. P. 23.  (*See id.* at ¶ 31.) This is especially so when taking into account that direct notice will be provided to an estimated 189,600 or more members of the Settlement Class, comprising an estimated 66 percent of the class, and responsible for an estimated 78 percent of both the total claim amount and the total sales in dollars of O'Reilly 303 Tractor Hydraulic Fluid during the Class Period. (*See id.* at ¶ 31.)

The content of the proposed notices also satisfies Rule 23's requirement.  The Mailed Class Notice and the Long Form Class Notice plainly describe the proposed Settlement Class, explain the material terms of the Settlement Agreement (including the benefits it provides to the Class), disclose Plaintiffs' counsel's application for attorneys' fees and reimbursement of expenses, give notice of the time and place of the final approval hearing, and set forth procedures and deadlines for opting out of the Settlement Class and submitting comments and objections. (*See* Joint Mot. Exs. 1-C and 1-E.)  The Mailed Class Notice and the Long Form Class Notice also fulfill the requirement of neutrality in class notices.  They summarize the proceedings to date and make clear that the Settlement does not constitute an admission of liability by Defendants and that the Court

has not ruled on the merits of the action. (*See id.*)  Accordingly, the Mailed Class Notice and Long Form Class Notice display the fairness, completeness, and neutrality required of a class-action settlement notice.

The Summary Class Notice, Joint Motion Exhibit 1-C, and the Publication Notice attached as Exhibit C to Mr. Wickersham's Declaration, Joint Motion Exhibit 3-C, likewise satisfy Rule 23's requirements. The Publication Notices will advise readers of the nature of the action, the definition of the Settlement Class, the claims asserted in the action, that Settlement Class Members may enter an appearance through counsel, that the Court will exclude from the Settlement Class any member who requests exclusion, the deadline by which exclusion must be requested, and the binding effect of a class judgment on Settlement Class Members. It will also direct Settlement Class Members to a website from which they may obtain more detailed information and documents, including, among other things, a Claim Form attached to the Settlement Agreement as Exhibit F; and, (ii) a Request for Correction Form attached to the Settlement Agreement as Exhibit G. (*See id.* ¶ 22 & Ex. C.)

8. *The Distribution and Claims Process is Appropriate.*

The agreed process for submitting, processing, and distributing claims on the Settlement Fund is reasonable, appropriate, and provides substantial benefits directly to Settlement Class Members, a majority of whom need not even submit a claim to obtain payment. (*See* Settlement Agreement, Joint Mot. Ex. 1, at ¶¶ 63-66.)

An estimated 181,200 Settlement Class Members receiving direct-mail notice of the Settlement will automatically receive a distribution from the Settlement Fund at the end of the notice period and are not required to submit a claim. (*See id.* at ¶ 64.)  This is expected to account for 63 percent of the total members of the Settlement Class and approximately 76 percent of both the total claims amount and the total sales in dollars of O'Reilly 303 Tractor Hydraulic Fluid during

29

the Class Period. (*See* W. Wickersham Decl., Joint Mot. Ex. 3, at ¶¶ 9-14.) Each such Settlement Class Member will receive a Mailed Notice listing the Class Member's purchases of O'Reilly 303 Tractor Hydraulic Fluid during the class period, and, if that Settlement Class Member does not timely object to, or request exclusion from, the Settlement, will then automatically receive a monetary award at the end of the notice period. (*See* Settlement Agreement, Joint Mot. Ex. 1, at ¶ 64.) If any of those Settlement Class Members do not believe the purchase information provided on the Mailed Class Notice is accurate, the Settlement Class Member may submit a Request for Correction Form in substantially the form submitted herewith as Exhibit 1-G to the Joint Motion and submit it to the Settlement Administrator for consideration. (*See id*.)

The Settlement Class Members for whom Defendants do not have O'Reilly 303 Tractor Hydraulic Fluid purchase history, and for whom the Settlement Administrator could not reasonably locate name and contact information, must submit a claim to obtain a monetary benefit from the Settlement Fund. (*See id.* at ¶ 65.) The claim must be in substantially the form of the Claim Form submitted herewith as Exhibit 1-F to the Joint Motion, and can be submitted to the Settlement Administrator via United States mail, fax, e-mail, or can be completed electronically through the interactive settlement website. (*See id.* ¶ 66.)

IV.    **CONCLUSION**

Based on the above and foregoing, Plaintiffs respectfully request that the Court grant preliminary approval of the proposed settlement and enter the proposed preliminary approval order.

Dated: April 6, 2020     Respectfully submitted,

**HORN AYLWARD & BANDY, LLC**

BY: */s/ Thomas V. Bender*
    Thomas V. Bender  MO 28099
    Dirk Hubbard   MO 37936
    2600 Grand, Ste. 1100
    Kansas City, MO 64108
    (816) 421-0700
    (816) 421-0899 (Fax)
    tbender@hab-law.com
    dhubbard@hab-law.com

**WHITE, GRAHAM, BUCKLEY,**
**& CARR, L.L.C**

BY: */s/ Gene P. Graham*
    Gene P. Graham  MO 34950
    William Carr   MO 40091
    Bryan T. White  MO 8805
    19049 East Valley View Parkway
    Independence, Missouri 64055
    (816) 373-9080 Fax: (816) 373-9319
    bcarr@wagblaw.com
    bwhite@wagblaw.com

**CLAYTON JONES, ATTORNEY AT LAW**

BY: */s/ Clayton A. Jones*
    Clayton Jones  MO 51802
    P.O. Box 257
    405 W. 58 Hwy.
    Raymore, MO 64083
    Office: (816) 318-4266
    Fax: (816) 318-4267
    clayton@claytonjoneslaw.com

**LUNDBERG LAW FIRM, P.L.C.**

BY:  _____/s/ Paul D. Lundberg_____
    Paul D. Lundberg, IA Bar #W00003339
    600 Fourth St., Suite 906
    Sioux City, Iowa  51101
    Tel: 712-234-3030
    paul@lundberglawfirm.com


**BEASLEY, ALLEN, CROW**
**METHVIN, PORTIS & MILES, P.C.**

BY: /s/ Rhon E. Jones_____
    Rhon E. Jones,  AL
    Tucker Osborne, AL
    218 Commerce St.
    Montgomery, AL 36104
    Rhon.Jones@BeasleyAllen.com

**EMERSON FIRM, PLLC**


BY: /s/ John G.. Emerson_____
    John G. Emerson, TX Bar No. 06602600
    830 Apollo St.
    Houston, TX 77058
    Tel: (800) 551-8649
    Fax: (501) 286-4659
    Email: jemerson@emersonfirm.com


**BOLEN ROBINSON & ELLIS, LLP**

BY:_____/s/ Shane M. Mendenhall_____
    Jon D. Robinson
    Joshua Rohrscheib
    Shane M. Mendenhall – ARDC No. 6297182
    Zachary T. Anderson - ARDC No.  6329384
    202 S. Franklin St., 2nd Floor
    Decatur, IL 62523
    Phone: 217-429-4296
    Fax: 217-329-0034
    Email: smendenhall@brelaw.com
    Email:  zanderson@brelaw.

**BRYANT LAW CENTER, P.S.C.**

BY: ___*/s/ Mark P. Bryant*_____
        Mark. P. Bryant      KY Bar #08755
        N. Austin Kennady    KY Bar  #96150
        P.O. Box 1876
        Paducah, KY 42002-1876
        Phone: (270) 442-1422
        Fax: (270) 443-8788
        Mark.bryant@bryantpsc.com
        Austin.kennady@bryantpsc.com

**GRIFFITH LAW CENTER, PLLC**

BY: ___*/s/ Travis A. Griffith*_____
        Travis A. Griffith, WVSB No. 9343
        One Bridge Place
        10 Hale Street, Suite 203
        Charleston, WV 25301
        T: (304) 345-8999
        F: (304) 345-7638
        E: travis@protectingwv.com

        **ATTORNEYS FOR PLAINTIFFS
        AND CLASS MEMBERS**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that this document was filed electronically with the United States District Court for the Western District of Missouri, with notice of case activity to be generated and sent electronically by the Clerk of the Court to all designated persons this 6th  day of April, 2020.

           _____*/s/ Dirk Hubbard*_____